Village of Oakwood, Appellee, *v.*
Clark Oil & Refining
Corporation, Appellant.

(No. 50999—Decided March 10, 1986.)

*Joseph W. Diemert, Jr.,* for appellee.

*John S. Kluznik* and *Margaret R. Foley,* for appellant.

Markus, P.J. The plaintiff village sought to enjoin the defendant automobile service station from selling "off the shelf" beverages and snack foods. The trial court granted that injunction on the ground that the village zoning code prohibits such activity at a service station in that zoning district. The service station appeals, arguing that the court incorrectly interpreted and applied the zoning laws. We agree, so we reverse that decision and remand the case for a determination of other zoning issues which the trial court did not reach.

I

The village's complaint alleges that the service station is violating the village zoning code by its retail sales of packaged food and beverages, including packaged alcoholic beverages. The complaint asserts that the code prohibits such sales at a service station there and requires additional off-street parking where it permits such sales. The parties submitted the case for decision on stipulated facts, related exhibits, a deposition from the village building and zoning inspector, and pertinent zoning ordinances. Collectively, those materials established the factual basis for the court's consideration.

In 1972, the service station applied for a "zoning certificate" for property it acquired from another gasoline supplier. At all times relevant to these proceedings, that property was located in a Local or General Business Zoning District. Permissible "main uses" for property in Local Business Districts include "retail sales" of "baked goods, confectionery, groceries, meats, fruits, vegetables, dairy products and packaged beverages." Oakwood Comprehensive Zoning Code Section 1169.02. Permissible "main uses" for such properties also include specified "services," with the following relevant provision:

"Automobile service stations may be permitted provided a Conditional Use Permit is granted in accordance with the standards for such permits and supplementary regulations of this Zoning Code."

" 'Main use' means the principal

purpose of, or activity in a building or other structure of land." *Id.* at Section 1135.19(b). The code also permits "accessory uses" in Local Business Districts. *Id.* at Section 1169.02(c):

"Any accessory use such as storage of goods, vehicles or processing operations which are clearly incidental to conducting a retail business, office or establishment, which is permitted as a main use shall be permitted, provided such accessory uses are enclosed in a structure and have no injurious effect on adjoining residential districts. Off-street parking and loading facilities and signs shall be provided according to applicable provisions of this Zoning Code."

" 'Accessory use' means a use located on the same zoning lot with the main use of a building or land, but incidental to the main use of a building or land." *Id.* at Section 1135.19(c).

"Main uses" for General Business District properties include all "retail sales" and "services" permitted in Local Business Districts, as well as numerous additional activities. *Id.* at Section 1169.03(b). General Business Districts also permit "Accessory Uses." *Id.* at Section 1169.03(a)(2):

"Accessory uses shall be permitted only when such uses are clearly incidental to a permitted main use on the same zoning lot. Except for permitted off-street parking, loading facilities and signs, accessory uses shall be conducted wholly within enclosed buildings."

The village granted the service station the required conditional use permit on January 24, 1973. The zoning code requires the planning commission to specify any terms applicable to a conditional use permit which it issues (*id.* at Section 1139.12):

"* * * If the application for the conditional use is approved, the Planning Commission shall set forth any specific terms, conditions and safeguards that shall be required so that the proposed use will conform with the intent and standards of the district. The Planning Commission shall then instruct the Building and Zoning Inspector to issue a Conditional Use Permit.* * *"

In this case, the village did not "set forth any specific terms, conditions and safeguards," except required pavement repairs and landscaping. It attached a copy of its ordinance 1972-7 (later codified as Section 1169.11 of the zoning code) to this service station's conditional use permit. That ordinance established supplementary regulations for all automobile service stations in the village. None of its "conditions" restricts the ability of service stations to sell other merchandise.

From its inception, the service station sold bottled soft drinks from two vending machines depicted on its original zoning application. Apparently, the station promptly applied to the county board of health for a permit to sell bread and milk. One week after issuing its zoning permit, the village wrote to the station that such activity "would be contrary to the Conditional Use Permit," and the station then abandoned that project.

Three months after receiving its conditional use permit, the station added a snack food vending machine. The village asserts that it expressly approved that additional sales activity. However, the record does not explain the village's authority to approve or disapprove of that additional vending machine. Three years later in 1976, the station began selling other packaged beverages and snack foods from shelves rather than vending machines. The station neither asked for nor received approval for that activity.

The village building inspector examined the premises regularly each

year. However, the village did not complain about those "off the shelf" sales until the station obtained a liquor department permit to sell beer in 1984. The village had unsuccessfully opposed the station's application to the liquor department for that permit.

Eight weeks after the station began selling beer, the village directed it:

"[T]o cease and desist from any further retail sale on these premises which are not permitted as an accessory to your business."

Three months later, the village initiated this action for injunctive relief and damages.

The station counterclaimed for declaratory relief that its actions are proper, injunctive relief against interference by the village, and expenses and attorney fees. The trial court denied the station's counterclaim and enjoined the station from selling:

"[A]lcoholic beverages, snack foods, or any other packaged beverages or [sic] its property for which a lawful permit has not been obtained and which constitutes a violation of the Comprehensive Zoning Code of Oakwood, Ohio."

## II

The service station presents eight assignments of error, all of which challenge the propriety of the court's final judgment. Thus, the station really assigns a single error, with eight reasons for contesting that single order. See *North Coast Cookies, Inc.* v. *Sweet Temptations, Inc.* (1984), 16 Ohio App. 3d 342, 343-344, 16 OBR 391, 393, 476 N.E. 2d 388, 391. Consequently, we comply with App. R. 12(A) by addressing these contentions together.

The village can lawfully restrict the use of land within its boundaries by reasonable, non-arbitrary, legislatively created zoning ordinances. *Euclid* v.

*Ambler Realty Co.* (1926), 272 U.S. 365. Such ordinances deprive landowners of the full use of their property, so courts construe them liberally in favor of the landowner. *Saunders* v. *County Zoning Dept.* (1981), 66 Ohio St. 2d 259, 261, 20 O.O. 3d 244, 246, 421 N.E. 2d 152, 154; *In re University Circle, Inc.* (1978), 56 Ohio St. 2d 180, 184, 10 O.O. 3d 346, 348, 383 N.E. 2d 139, 141.

The village council could not delegate the determination of general standards for land usage to an administrative body. *State, ex rel. Selected Properties, Inc.,* v. *Gottfried* (1955), 163 Ohio St. 469, 56 O.O. 397, 127 N.E. 2d 371, paragraph one of the syllabus; *Consolidated Mgmt., Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238, 242, 6 OBR 307, 311, 452 N.E. 2d 1287, 1291. The regulatory power resides exclusively with the legislative authority, subject to interpretation by the judicial authority and enforcement by the executive or administrative authority.

This village council authorized landowners in Local or General Business Districts to use their land for retail sales of "baked goods, confectionery, groceries, meats, fruits, vegetables, dairy products and packaged beverages." It also permitted them to use their land as "automobile service stations" if they satisfied other legislatively established standards.

The village's zoning code does not and could not authorize any other governmental body to determine the general standards necessary to obtain a conditional use permit. It did properly authorize the village planning commission to ensure that each applicant for such a conditional use permit had satisfied the legislatively created standards. It also properly authorized the planning commission to impose conditions on the landowner's use which implement or enforce those legislatively created standards.

In the present case, the planning commission determined that this service station complied with the legislatively created standards and issued the required conditional use permit. The commission did not and could not impose conditions on that use which were not established by the zoning code itself. Cf. *Hydraulic Press Brick Co.* v. *Council of Independence* (1984), 16 Ohio App. 3d 204, 208-209, 16 OBR 219, 223-224, 475 N.E. 2d 144, 148-149. The planning commission did not purport to prohibit retail food products sales in the conditional use permit which it issued to this station. Manifestly, it could not do so at a later time, after approving the station's compliance with the zoning code's conditions.

The council's zoning code also permits landowners to engage in "any accessory use" which is "clearly incidental" to a permitted "main use." The undisputed evidence in this case demonstrates that the station sells ninety-five percent of its packaged snacks and beverages to its gasoline customers. Hence, those sales are clearly incidental to the service station's main use of the property and constitute an accessory use allowed by the zoning code. Cf. *White* v. *Bd. of Zoning Appeals* (1983), 6 Ohio St. 3d 68, 70, 6 OBR 111, 112, 451 N.E. 2d 756, 758; *Samsa* v. *Heck* (1967), 13 Ohio App. 2d 94, 98, 42 O.O. 2d 208, 210, 234 N.E. 2d 312, 315; *Misnik* v. *Oakwood* (Dec. 12, 1985), Cuyahoga App. No. 49588, unreported.

Nothing in the zoning code, or in the conditional use permit which demonstrated this station's compliance with that code, restricts such sales to vending machines. The village cannot prevent lawful activity which complies with its zoning code. It cannot create new zoning regulations or conditions which prevent a landowner from continuing lawful activities that began before the village changed its zoning code. R.C. 713.15; *Pschesang* v. *Terrace Park* (1983), 5 Ohio St. 3d 47, 49, 5 OBR 104, 105, 448 N.E. 2d 1164, 1166.

Nor did the situation change when the station began to sell beer pursuant to a state liquor department permit. The village may have authority to restrict locations where landowners sell alcoholic beverages by enacting valid zoning laws. *Fairmount Foods* v. *Dayton* (Feb. 2, 1982), Montgomery App. No. 7500, unreported; *Berry* v. *Hofle* (Nov. 18, 1977), Clark App. No. 1144, unreported. If it has that authority, it did not exercise it in its zoning code. The code makes no reference to alcoholic beverages and no distinction between alcoholic and non-alcoholic packaged beverages. Hence, the village cannot create new restrictions or conditions for the sale of packaged alcoholic beverages which do not exist in its code.

We need not decide the constitutional issues raised by the service station. The zoning code itself supports the service station's right to sell these food products. Courts will avoid constitutional questions when non-constitutional rulings are dispositive. *Greenhills Home Owners Corp.* v. *Greenhills* (1966), 5 Ohio St. 2d 207, 34 O.O. 2d 420, 215 N.E. 2d 403, paragraph one of the syllabus; *Dempsey* v. *Chicago Title Ins. Co.* (1983), 10 Ohio App. 3d 281, 283, 10 OBR 397, 399, 462 N.E. 2d 184, 186.

However, the village zoning code legally prohibits otherwise lawful activities when there is insufficient off-street parking. Cf. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 96-97, 20 O.O. 3d 88, 90, 420 N.E. 2d 103, 106. The village's complaint asserts that the defendant service station violates those parking provisions, and the trial court did not reach that contention.

Ordinarily, appellate courts refrain from deciding issues that the trial court has not yet considered. *Kalish* v.

184

*Trans World Airlines* (1977), 50 Ohio St. 2d 73, 79, 4 O.O. 3d 195, 198, 362 N.E. 2d 994, 998; *Broadview Management Corp.* v. *Miclau* (July 31, 1980), Cuyahoga App. No. 39602, unreported; *Williams* v. *Wilson* (May 24, 1979), Cuyahoga App. No. 38938, unreported. Thus, the trial court should decide whether the station satisfies the code's parking requirements before this court addresses that question.

We reject the service station's argument that the village's apparent acquiescence in the station's food sales estops the village from complaining that they are illegal. The trial court could properly find that the station suffered no damage by reliance on any affirmative act by the village. Cf. *Haba* v. *Cuff* (App. 1963), 28 O.O. 2d 266, 269, 201 N.E. 2d 343, 346; *Cleveland* v. *Cleveland Elec. Illum. Co.* (N.D. Ohio 1977), 440 F. Supp. 193, 204. The village is no more estopped to enforce its laws than the station is estopped by its acquiescence to restrictions on bread and milk sales in 1973.

Therefore, we sustain the assignment of error which challenges the trial court's final judgment on the grounds considered by that court. We remand the case for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

ANN MCMANAMON and KRUPANSKY, JJ., concur.