ROSS, Appellant,

v.

MAUMEE CITY SCHOOLS et al., Appellees.*

[Cite as *Ross v. Maumee City Schools* (1995), 103 Ohio App.3d 58.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–144.

Decided April 28, 1995.

_____

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1408, 655 N.E.2d 187.

*Paul Belazis,* for appellant.

*T. Scott Johnston, Keith Wilkowski* and *Joseph Dawson,* for appellees.

*Per Curiam.*

On September 23, 1992, plaintiff-appellant, Sonia A. Ross, filed a complaint in which she alleged that the intentional conduct of her employer, defendant-appellee, Maumee City Schools, caused her physical injury and emotional distress. Clair L. Jacobi, Superintendent of Maumee City Schools, and Donald R. Yates, Director of Student Services for Maumee City Schools, were also named as defendants in the complaint. An amended complaint, containing basically the same allegations, was filed on June 16, 1993. A claim for breach of contract raised for the first time in the amended complaint was later struck by the trial court.

Appellees answered the complaint and raised, among other things, the defense of sovereign immunity under R.C. Chapter 2744.

Appellees then filed a motion for summary judgment asserting that no question of fact existed on the issue of intent to injure appellant. Additionally, appellees urged that no material question of fact existed on the issue of whether appellant's claim was barred by R.C. Chapter 2744, the Political Subdivision Tort Liability Act. Appellant filed a memorandum in opposition. Both parties filed supplemental memoranda. The motion and the opposing memoranda were supported by the pleadings, affidavits, depositions and other documentary materials. The following facts were offered in those materials.

In her deposition testimony, appellant stated that she started working, part-time, for Maumee City Schools in 1985 as an aide at the Extended Learning Center. At that time, appellant helped care for severely and profoundly retarded individuals. In the summer of 1991, appellant applied for a full-time position as a teacher's assistant in the multihandicapped classroom at Maumee High School. She was hired for this position and began working in the unit in September 1991.

It is undisputed that seven young people between the ages of sixteen and twenty-one and with various physical and mental disabilities were the members of the multihandicapped unit prior to August 1991. Their teacher was Patti L. Cartlidge, who was assisted by Judy Leck. Cartlidge stated in her deposition that only one child of the seven could become "violent." However, she and Leck agreed that any outburst by this child could be readily predicted.

In August 1991, "Douglas,"[1] a fourteen-year-old who was severely mentally retarded, autistic, suffered from seizures and had cerebral palsy, was placed in Cartlidge's class. When appellant assumed her new job in the multihandicapped

---

1. The pseudonym "Douglas" is used throughout this decision for the purpose of confidentiality.

unit, she was informed that Douglas was her sole responsibility and that she would be working with him "one-on-one."

Within a short time after Douglas was placed in the multihandicapped unit, it became apparent to the classroom staff that he could, without any warning, become extremely violent. Douglas would hit and kick other persons or himself, throw and/or smash objects in the classroom, and run around or out of the classroom. The violence occurred on almost a daily basis. Several unusual incident reports were filed as the result of Douglas's behavior. On many of these occasions, the other students were removed from the room for their own protection. Ultimately, Douglas was frequently removed from the classroom and sent home.

In her deposition, appellant stated that she informed Yates in September and October 1991 of the inappropriateness of Douglas's placement. Cartlidge also testified that she did not think that the placement was appropriate and that she had requested a male teacher's assistant for the purpose of controlling Douglas.

In his affidavit, Don Montague, a representative of the Ohio Education Association, stated that he and Cartlidge attended a meeting with Yates and Jacobi. According to Montague, Cartlidge voiced her concerns related to the safety of the staff and the other students in the multihandicapped unit as a result of Douglas's violent behavior. Cartlidge also testified, without objection, that the principal and assistant principal later voiced objections to the placement of Douglas in Maumee High School's multihandicapped unit.

On October 7, 1991, Yates sent a memorandum to Cartlidge, Leck and appellant with recommendations for managing Douglas. Yates suggested that when Douglas became violent physical intervention was to be avoided, if at all possible, and that the classroom environment needed to be physically restructured for safety and learning purposes. Appellant, Cartlidge and Leck were sent for classes in crisis prevention-intervention and sign language. A learning behaviorist also observed the class and made some recommendations. The room was restructured and the recommendations were followed by the classroom staff. Nevertheless, Cartlidge insisted these remedies were insufficient and, as Douglas became increasingly more aggressive, her classroom became a "battleground."

Appellant, Cartlidge and Leck stated that, contrary to the suggestion made by Yates, the crisis prevention-intervention classes taught them to physically intervene when a child "acted out." Cartlidge and Leck both asserted that it was everyone's responsibility to help when a child began exhibiting behavior problems, either in the classroom or elsewhere in the building. Personnel from other parts of the school were often called to help control Douglas when he became overly violent.

Nonetheless, according to appellant, she was told by Yates that she was the only staff member responsible for Douglas. She maintained that on one occasion she was on the floor in a hallway attempting to restrain Douglas while another member of the school staff just stood and watched. Appellant insisted that this staff member told her that he had been ordered not to intervene. Both appellant and Cartlidge stated that Yates was present during an incident in the classroom where Douglas either pulled appellant's chair out from under her or knocked her off the chair and that Yates did not intercede. In his deposition, Yates denied ever instructing any staff members not to aid appellant when Douglas became physically abusive. Both Cartlidge and Leck could not recall receiving such an instruction.

In attempting to control Douglas, who was larger and stronger, appellant was injured numerous times. Finally, in early December 1991, Douglas hit, kicked and punched appellant in the abdomen, legs and breast. Upon her doctor's recommendation, appellant took a leave of absence.

During the period in which appellant was responsible for Douglas, appellees offered her alternative employment. Appellant, whose adopted son has special needs, refused the alternative employment because it was part-time and would result in the loss of her medical benefits.

Twice in the approximately five months that Douglas was in the Maumee High School multihandicapped unit, a team, consisting of the school principal, Cartlidge and Douglas's mother, reviewed Douglas's individual education program ("IEP") and recommended that he remain in the unit. While appellees argued that this was evidence of the propriety of Douglas's placement, appellant testified that Douglas's mother threatened to sue appellees if Douglas was permanently removed from the multihandicapped unit.

It is uncontradicted that by December the parents of the other seven students in the multihandicapped unit became concerned about the safety and well-being of their children. Thus, a meeting with these parents was scheduled for January 14, 1992. Although she was still on medical leave, appellant attended the meeting. Both she and Leck declared that they were told not to "say anything" during the meeting. Yates claimed that the staff was never advised to "not talk" during the meeting.

Appellant returned to work on January 27, 1992. On January 31, 1992, Douglas picked up a chair and threw it. The chair hit one of the other students in the leg. Douglas then kicked appellant in the chest, breaking some of her ribs. Appellant was taken to the hospital by ambulance.

Cartlidge and appellant testified that parents of the student who was injured threatened to sue Maumee City Schools; therefore, Douglas was removed from

the multihandicapped unit. Yates stated that when she was apprised of the situation, Douglas's mother decided to transfer her son back to Larc Lane School. The transfer was accomplished immediately.

In an affidavit filed in support of her memorandum in opposition, appellant offered the opinions of Craven S. McLoughlin, Ph.D., a professor of school psychology who previously worked with children with emotional and behavioral problems, including autistic children. Based upon a review of the materials offered in support of and in opposition to the motion for summary judgment, Dr. McLoughlin opined, to a reasonable degree of certainty, that the placement of Douglas in the multihandicapped unit was inappropriate. It was also his opinion, to a reasonable degree of certainty, that "the injury to plaintiff [appellant] was inevitable."

Appellees, in their reply memorandum, relied on statutory sovereign immunity as a basis for judgment in their favor and, therefore, declined to address the admissibility of the statements in McLoughlin's affidavit. Appellees did, however, argue the following in a footnote:

"McLoughlin's opinions are, for the most part, inadmissible because they seek to displace the Court in determining matters of law. McLoughlin's opinion that 'the school district failed to act reasonably under the circumstances' and his opinions concerning legal avenues open to the school district (McLoughlin Aff. paragraphs 11 and 12) are inadmissible and must be stricken."[2]

On April 22, 1994, the trial court granted appellees' motion for summary judgment. The court found that no question of material fact existed on the issue of appellees' intent to injure appellant. In applying the tripartite test used to determine intent in cases such as this one, see *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the court held that the first prong of the test, knowledge of the employer of a dangerous condition within its business operation, was satisfied. The court, however, decided that no question of fact existed on the remaining two prongs. That is, the court found that no question of material fact existed as to whether appellees (1) were substantially certain that injury to appellant would occur, and (2) knew of the dangerous condition and still required appellant to perform the dangerous task. The lower court did not reach the question of sovereign immunity.

Appellant appeals this judgment and sets forth the following assignment of error:

"The trial court erred in granting defendants' motion for summary judgment."

---

**2.** Assuming, *arguendo,* that those portions of Dr. McLoughlin's affidavit specifically objected to by appellees are stricken, the remainder of the affidavit is admissible under Evid.R. 702, 703 and 704.

Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. In deciding whether a genuine issue of fact precludes the grant of summary judgment, a court must adhere to Civ.R. 56(C) and view the evidence in a light most favorable to the nonmoving party. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1126–1127. Even the inferences to be drawn from the underlying facts contained in the affidavits and depositions must be construed in the nonmoving party's favor. *Id.* at 341, 617 N.E.2d at 1126–1127.

The moving party is required to "specifically delineate the basis upon which summary judgment is sought * * *." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Once the moving party sets forth specific reasons for summary judgment, the nonmoving party bears a reciprocal burden to produce evidence on any element essential to his case for which he bears the burden of proof at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274.

The substantive law applicable to this case is found in a line of cases following *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, wherein the court held that Ohio's Workers' Compensation Act does not bar an employee from suing his or her employer for an intentional tort. The Supreme Court of Ohio defined an intentional tort as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, paragraph one of the syllabus. Following *Blankenship,* Ohio courts focused on the proof required to establish intent for the purpose of showing that an employer committed an intentional tort against his employee. See, *e.g., Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489.

In *Fyffe,* the Supreme Court of Ohio set forth the law of employer intentional tort as it exists today. In order to establish intent for the purpose of proving an employer intentional tort, the employee must demonstrate:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under

such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe, supra,* 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

In setting forth the proof required to establish intent, the *Fyffe* court held that "mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.* at paragraph two of the syllabus. Rather, it must be shown that the probability of certain consequences is such that the "employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds * * *." *Id.*

▆▆▆ Accordingly, in order to overcome appellees' motion for summary judgment, appellant was required to offer specific operative facts that appellees caused her injury to occur by compelling her to work under dangerous conditions while knowing that it was substantially certain that she would be injured. The claimant must allege facts which show the employer's actual knowledge of the dangerous condition. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753.

▆▆▆ We agree with the trial court in finding that the evidence presented created a question of fact as to whether appellees had actual knowledge of a dangerous condition in the multihandicapped unit. However, we further find that, in viewing the evidence in a light most favorable to appellant, genuine issues of material fact exist on both the second and third prongs of the *Fyffe* test.

The court below relied on the fact that two IEP reviews were held during the period that Douglas was in the care of appellant and that Douglas's continued placement in Maumee High School multihandicapped unit was deemed appropriate. This reliance is misplaced because conflicting operative facts offered by appellant reveal that several persons, including the classroom teacher and an expert, were of the opinion that Douglas's placement in the unit was inappropriate.

More important, the specific operative facts provided in the materials in support of and in opposition to the motion for summary judgment disclose that once Douglas was placed in the unit, his violent outbursts escalated. As a result of these outbursts, appellant received many physical injuries. Appellees were fully aware of these injuries and that a dangerous condition existed in the multihandicapped unit. While the trial court emphasized the fact that appellees undertook some remedial measures, the evidence offered by the parties indicates that the dangerous condition did not abate. Rather, it could be inferred that it became even more dangerous, that appellees knew of this danger and that they failed to take steps to eliminate the condition. Given these circumstances, questions of fact exist as they relate to the issue of whether appellees were

substantially certain that injury would occur to appellant as a result of the dangerous conditions in the multihandicapped unit.

Moreover, the evidence suggests that appellees required appellant to continue performing the dangerous task despite knowing that serious injury was substantially certain to occur. The fact that she was offered alternative part-time employment is not dispositive of this issue. Rather, it simply creates a genuine issue of material fact on the third prong of the test. The trial court employed this fact in a manner which suggested that appellant assumed the risk of her injuries. This is not the proper focus of an intentional tort claim. *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203.

■ Indeed, the trial court implied that any employee situated in an inherently dangerous setting is precluded from ever bringing an intentional tort claim against his or her employer. This analysis is improper for two reasons. First, it assumes that working with multihandicapped children is "necessarily dangerous." The facts of this case refute this assumption. That is, under the facts of this case, working in the multihandicapped unit presented little or no danger until Douglas was placed in that unit. Second, this implication is overbroad. It intimates that anyone who works in what could be deemed an "inherently dangerous" job, *e.g.*, a nurse, assumes the risk of any and all hazards, including those which are preventable. To the contrary, we are of the opinion that an intentional tort claim can be raised, in certain and specific contexts, where a job is considered "inherently dangerous." See, *e.g., Taylor v. Dept. of Rehab. & Corr.* (July 1, 1994), Court of Claims No. 93–03951, unreported (estate of a teacher in a high security prison who was murdered by one of the inmates prevailed on a wrongful death claim based upon the intentional tort of her employer). We therefore reject the reasoning of the trial court.

For the foregoing reasons, the trial court erred in granting appellees' motion for summary judgment. Appellant's sole assignment of error is found well taken.

Even though the trial court never considered the issue of statutory sovereign immunity, appellees ask this court to decide this issue and affirm the grant of their summary judgment motion.

■ Generally, appellate courts do not address issues which the trial court declined to consider. *Oakwood v. Clark Oil & Refining Corp.* (1986), 33 Ohio App.3d 180, 183–184, 515 N.E.2d 1, 4–5. In *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 89, 585 N.E.2d 384, 389–390, the Supreme Court of Ohio specifically noted that where the trial court declined to consider one of the arguments raised in a motion for summary judgment, but granted the motion for summary judgment solely on the basis of a second argument, the first argument was not properly before the court of appeals. Accordingly, we find that the question of

statutory sovereign immunity is not properly before this court and shall reserve judgment, if any, until such time that the trial court addresses this issue.

The judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to that court for further proceedings not inconsistent with this judgment. Costs of this appeal assessed to Maumee City Schools, Claire Jacobi and Donald Yates.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK, SHERCK and MILLIGAN, JJ., concur.

JOHN R. MILLIGAN, J., retired, of the Fifth Appellate District, sitting by assignment.