JOURNAL ENTRY AND OPINION
These twelve consolidated appeals arise from four separate actions filed in the Cuyahoga County Court of Common Pleas. Each action concerned a different parcel of property owned by the Board of Park Commissioners of the Cleveland Metropolitan Park District (hereafter "Metroparks"). In each case, the trial court determined that no special benefits justified the sanitary sewer assessment levied by the City of Broadview Heights on the respective parcels. Finding the special assessment unconstitutional, the court entered summary judgment in favor of the Metroparks to bar the Cuyahoga County Treasurer from foreclosing on the four parcels and to further enjoin the Cuyahoga County Treasurer, the Cuyahoga County Auditor and the City of Broadview Heights from assessing, reassessing, levying, or certifying for collection the assessments against these four parcels. In each case, the Treasurer, Auditor, and City of Broadview Heights separately appealed. We affirm.
The Cleveland Metroparks is a park district organized and operating under chapter 1545 of the Ohio Revised Code. It was established in 1917 and currently consists of more than 19,000 acres of land in fourteen reservations and connecting parkways scattered throughout northeast Ohio. Its facilities include picnic areas, play fields, wildlife management areas, waterfowl sanctuaries, nature centers, trails for hiking, horseback riding, bicycling, and physical fitness, golf courses, and areas for swimming, boating, fishing, sledding, ice skating, and cross-country skiing. Its self-described mission is "to acquire, preserve, and protect land in its natural state to ensure that once non-Cleveland Metroparks land has been developed, there still will be some property in its natural state to be enjoyed by the public."
The four parcels in question here were acquired by the Metroparks during the 1960s and are located in the Metroparks' Brecksville Reservation.[1] According to Stephen D. Coles, the Metroparks' Chief of Park Planning, "[e]ach of these parcels consists of heavily wooded land" and continues to exist in its "undisturbed natural state for the benefit of the plant and animal life thereupon, and for the benefit of members of the public who appreciate and enjoy the same."
In the early 1980s, the City of Broadview Heights undertook to install sanitary sewer lines in the city. In February 1984, Broadview Heights adopted a Resolution of Necessity to install the sanitary sewer lines. There was a building moratorium in Broadview Heights at the time because too many package treatment plants and septic systems were failing. Broadview Heights financed the project by a combination of federal grant funds, city funds, and money borrowed from the Ohio Water Development Authority ("OWDA"). The loan from OWDA was to be repaid by assessments levied upon land specially benefitted by the sewer improvements.
Broadview Heights reports it created approximately 28 miles of new sewage piping at a cost of roughly $14,000,000. Broadview Heights did not install any sanitary sewers on the four Metroparks parcels at issue here or on Valley Parkway, the street nearest to the four parcels. The four parcels are so situated, however, as to be able to make use of a trunk sewer that was part of the project if the Metroparks installs lateral sewers. Other Metroparks facilities within the Brecksville Reservation use municipal water and sanitary sewer systems, but these parcels do not.
Broadview Heights assessed nearly three thousand parcels of land for the project, including the four Metroparks parcels which, we are told, are interspersed in a residential area. Explaining the assessment levied on these parcels, City Engineer Richard Allar testified: "[The parcels] have frontage on the street, they do build houses on the street, when they got to say when the sanitary sewer was installed, they have back land that could be sold for development."
The Metroparks objected to the estimated assessments, and, on March 21, 1984, Broadview Heights appointed three disinterested freeholders to act as an Assessment Equalization Board (AEB). On April 5, 1984, the Metroparks submitted its objection to the AEB. On April 13, 1984, the AEB rejected the Metroparks' objections as to three of the parcels but recommended a reduction in the amount of $1,224.00, for PPN 584-17-014. On April 17, 1984, the Broadview Heights City Council approved the AEB's report and recommendations, filed the revised assessments, and passed an ordinance to proceed with the sewer project.
The Metroparks states it never received formal notice from the AEB indicating whether the AEB sustained or overruled the Metroparks' objection. Consequently, the Metroparks did not pursue an administrative appeal pursuant to Chapter 2506 of the Ohio Revised Code. Broadview Heights had no evidence indicating that notice was ever issued or disputing that the Metroparks did not receive notice.
Construction of the sewer project was completed in late 1987. Upon completion of the project, Broadview Heights levied the previously-filed assessments, payable in cash in 1988 or in annual installments over twenty years with interest. Assessments not paid in cash by September 1, 1988 were certified to the Cuyahoga County Auditor for placement on the tax duplicate for collection as taxes are collected. Because the Metroparks had not paid any amount of the assessments levied on these parcels, the County Auditor filed a delinquent land tax certificate.[2]
The Metroparks states it heard nothing about its objection to the assessment until 1988, when it received its first tax bill for the assessment. Correspondence between the Metroparks and Broadview Heights was exchanged sporadically between 1988 and 1995, but the dispute was not resolved.
On May 25, 1995, the Cuyahoga County Treasurer filed four separate complaints in the Court of Common Pleas for collection of delinquent taxes, assessments, penalties, and interest; for foreclosure; and for equitable relief.[3] On August 28, 1995, the Metroparks filed answers and third-party complaints for equitable and injunctive relief against the Cuyahoga County Treasurer, the Cuyahoga County Auditor, and the City of Broadview Heights. The cases were consolidated for disposition.
Third-party defendant City of Broadview Heights filed for summary judgment on March 3, 1998 to defeat the Metroparks' third-party complaint on the grounds of (1) laches and (2) failure to exhaust adminstrative remedies resulting in claim preclusion under res judicata. The Metroparks opposed that motion and separately filed for summary judgment on May 15, 1998 to defeat the Cuyahoga County Treasurer's claims and to prevail on the Metroparks' third-party complaint against the Treasurer, Auditor, and City of Broadview Heights, arguing that (1) the Treasurer's attempt to foreclose on park properties without probate court approval was barred by R.C.1545.12, and (2) the special assessments were unconstitutional because the parcels received no benefit from the sanitary sewers.
In support of the Metroparks' motion, Park Planning Chief Coles testified that "[n]one of these [four] parcels has any use for sanitary sewers since none has any flush toilets, shower or sink runoff, or any other facilities that would utilize sanitary sewers." In his opinion, "the four Cleveland Metroparks parcels at issue did not benefit and do not benefit in any way from the City of Broadview Heights' installation of sanitary sewers." The Metroparks insists it intends to maintain these four parcels in their natural undisturbed state, without need of sanitary sewers, and that there are no plans to develop or sell parcels such that there would be any need for sanitary sewers in the future.
Broadview Heights and the County Treasurer separately opposed the Metroparks' motion. Neither offered evidence to contradict the Metroparks' contentions.
On October 16, 1998, the trial court issued its ruling which states:
 After reviewing the dispositive motions the court makes the following orders: The motion of the City of Broadview Hts. for summary judgment is OVERRULED. The Defendant [Metroparks'] motion for summary judgment is GRANTED. The Court finds that the Cleveland Metroparks is entitled to judgment as a matter of law with respect to the Complaint of the Treasurer of Cuyahoga County, Ohio, and the Cleveland Metroparks' Third Party Complaint against the City of Broadview Hts., and the Auditor of Cuyahoga County, Ohio. The Court further finds that there is an absence of "special benefits" to the Cleveland Metroparks' four parcels of land at issue in this case. FINAL.
The City of Broadview Heights, the County Treasurer, and the County Auditor individualy filed separate appeals from each of the four underlying common pleas actions. Their twelve appeals were consolidated for briefing, hearing and disposition. These appellants jointly present three assignments of error:
 I. THE TRIAL COURT COMMITTED REVERSIBLE, PREJUDICIAL ERROR WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANT/THIRD-PARTY PLAINTIFF, ON THE TREASURER'S COMPLAINT, WHEN SAID JUDGMENT IS CONTRARY TO THE LAW AND, AT BEST, IS SUBJECT TO MATERIAL FACTS OVER WHICH THERE ARE GENUINE ISSUES.
 II. THE TRIAL COURT COMMITTED REVERSIBLE, PREJUDICIAL ERROR WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANT/THIRD-PARTY PLAINTIFF, ON ITS THIRD-PARTY COMPLAINT, WHEN SAID JUDGMENT IS CONTRARY TO THE LAW AND, AND, AT BEST, IS SUBJECT TO MATERIAL FACTS OVER WHICH THERE ARE GENUINE ISSUES.
 III. THE TRIAL COURT COMMITTED REVERSIBLE, PREJUDICIAL ERROR WHEN IT OVERRULED THE MOTION FOR SUMMARY JUDGMENT OF THIRD-PARTY DEFENDANT, THE CITY OF BROADVIEW HEIGHTS, WHEN SUCH JUDGMENT COULD AND SHOULD HAVE BEEN GRANTED AS A MATTER OF LAW BASED UPON FACTS OVER WHICH THERE ARE NO GENUINE ISSUES.
This case essentially presents two issues: (1) whether the Metroparks demonstrated the special assessments were unlawful, entitling the Metroparks to judgment as a matter of law on the Treasurer's complaints and on the Metroparks' third-party complaints; and (2) whether the Metroparks' challenge to the special assessment was barred either by laches or by a failure to exhaust administrative remedies. We conclude the trial court correctly determined that the Metroparks was entitled to judgment as a matter of law. Accordingly, we overrule all three assignments of error and affirm the grant of summary judgment.
Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. To obtain a summary judgment under Civ.R. 56(C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). Lee v. Sunnyside Honda (1998), 128 Ohio App.3d 657, 660; N. Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440. We now apply these principles to the case before us.
 I
The authority of a municipal corporation to assess a property owner for public improvements which benefit the owner's property commensurately has long been recognized in Ohio. Thus in Chamberlain v. City of Cleveland (1878), 34 Ohio St. 551, the first paragraph of the court's syllabus reads:
 To enable a municipal corporation to pay for a local public improvement it may, by assessment, take from an individual whose lands are subject to assessment and specially benefitted by the improvement, such a portion of the costs thereof as is the equivalent, but not in excess, of the special benefits conferred thereby.
The Metroparks does not dispute that its property may be assessed for such public improvements.[4] See Akron Metro. Park Dist. Bd. of Commrs. v. Akron (1994), 96 Ohio App.3d 597.
In Domito v. Village of Maumee (1942), 140 Ohio St. 229, however, the court declared in paragraph 1 of the syllabus:
 A purported assessment for a public improvement levied against private property, which is substantially equal to or greater than the value of the property after the improvement is made, constitutes the taking of property for public use without compensation, in contravention of Section 19, Article I of the Constitution of Ohio, and the owner may enjoin its collection in a court of equity upon the ground of invalidity.
In Schiff v. City of Columbus (1967), 9 Ohio St.2d 31, the court refined the Domito test and established the following as Ohio syllabus law:
 4. The enhancement in the value of property that results from a public improvement is the special benefit that will support an assessment against that property to pay for the improvement. Such enhancement in value of such property is a benefit to its owner that accrues to him and not to the public or to the rest of the community.
 5. In order to be entitled to an injunction against any part of an assessment for the cost of a public improvement against a lot, the owner thereof has the burden of proving that the lot was not enhanced in value as a result of the improvement in an amount equal to the amount of the assessment.
The Supreme Court of Ohio has said that "legislative determinations for such improvements and the procedures for such assessments may be presumed to be valid until a showing is made to the contrary." Wolfe v. City of Avon (1984), 11 Ohio St.3d 81, 82-83. According to Wolfe,
 the landowner must offer sufficient proof of the value of his property before and after the alleged improvement. If the evidence adduced does not sustain the property owner's claim of no enhancement of value, then he fails in his bid for an injunction and the city may proceed to collect the assessment.
Id., 11 Ohio St.3d at 84.
In the case at bar, all parties agree that no sanitary sewers were installed on these four Metroparks parcels or on Valley Parkway, the street nearest to the four parcels. The Metroparks would have to install lateral sewers in order to make any use of sewers installed in the project. Additionally, the Metroparks submitted testimony from Stephen D. Coles, the Metroparks' Chief of Park Planning, who stated that the four parcels at issue here did not and would not benefit from Broadview Heights' sanitary sewer project.
The appellants contend that the Metroparks' evidence was deficient because it did not specify the value of the land before and after the improvement. The appellants maintain that only evidence reduced to dollars and cents is sufficient to overcome the presumption that the property is benefitted. We do not agree.
While the property owner may submit fair market value appraisals to show that there has been no value enhancement, the property owner may also sustain this burden even without specifying a dollar value. In Wolfe, supra, the court reversed a summary judgment against the property owner because his evidence raised issues of fact as to whether his property had not been enhanced in value through the installation of a water main even though the value was not stated in dollars and cents. Similarly, in Stewart v. Bay Village (1990), 69 Ohio App.3d 817, this court held that the property owner successfully showed that his property would not be adequately enhanced in value by construction of a sidewalk notwithstanding that his evidence was not reduced to dollars and cents. The Stewart court stated: "Dollar values are not essential." Stewart, 69 Ohio App.3d at 820 (citing Wolfe).
More recently, in Pruchnicki v. McCormack (July 30, 1998), Cuyahoga App. No. 73579, unreported, our court upheld an order enjoining recovery of a sewer assessment on residential property when the property owner showed he was neither an actual nor potential user of the sewer system so that his land would not benefit from the installation. Value enhancement based on fair market appraisals was not a consideration. The Pruchnicki court ruled: "[T]he assessment substantially and materially exceeds any benefit the sewer could confer upon the property." Pruchnicki, at 2.
In the case at bar, Coles testified that the Broadview Heights sewer project did not and would not benefit the Metroparks property. The Metroparks thus offered evidence to overcome any presumption that the property would benefit. It was not necessary to give a monetary appraisal to prove that the property received no benefit from the improvement. See Wolfe, supra; Stewart, supra; Pruchnicki, supra.
In response to the Metroparks' evidence, the appellants rely on City Engineer Allar's testimony that the parcels could benefit in the future if the Metroparks subsequently developed the parcels or sold them to land developers. A similar argument was rejected in D'Antuono v. City of Springfield (1960), 114 Ohio App. 102. In that case, Mary D'Antuono successfully challenged an assessment for a sidewalk improvement because her property received no special benefits from the improvement. The evidence there showed that there were no buildings on her land; the land was used for agricultural purposes; the land was below the elevation of the street; and there were no sewerage facilities along the street. There was substantial agreement that the sidewalk improvement did not benefit the land so long as the land was used for agricultural purposes. The land was still being used as a cornfield four years after the sidewalk's construction, when the case was tried, and seven years later, when the appeal was heard. The city nevertheless argued that there could be special benefits in the future if the land were developed for building lots. The D'Antuono court rejected that contention, stating:
 It is well established that assessments may be based on potential and prospective benefits to land, but an assessment that completely ignores the difference in value between an immediate opportunity of use and a use that is prospective only is generally regarded as arbitrary and unreasonable. Here the prospective benefits appear too speculative and remote to justify the assessment. We realize that courts may not interfere with the discretionary power of the legislative body of the city concerning benefits except in those cases where there is a clear abuse of discretion. But in our opinion, this is such a case.
D'Antuono, 114 Ohio App. at 106.
Similarly, the evidence here showed that the Metroparks acquired these parcels by 1966, maintaining them as park property subject to Chapter 1545 of the Revised Code. Broadview Heights completed construction of the sewer project in 1987, yet the Metroparks' use and maintenance of these lands remains unchanged. The Metroparks' evidence indicated that this use would continue into the future, and the appellants presented no evidence to contradict this essential contention. As was the case in D'Antuono, the appellants' claim that some future use might yield some special benefit is too speculative and remote to justify these assessments.
In this posture, the Metroparks sustained its burden of presenting evidence under Civ.R. 56(C) showing there was no current benefit to its property from sanitary sewers that were not installed on any of the four parcels at issue or even on the street nearest to the four parcels and that there would be no benefit in the foreseeable future from this improvement. Appellants did not present any evidence disputing these contentions. Unless the Metroparks was barred from raising its objection, the Metroparks was entitled to judgment as a matter of law. We turn then to the arguments the appellants advance to preclude the Metroparks from raising this objection.
 II
The appellants contend that the Metroparks should be barred from disputing the assessments on grounds of laches or failure to exhaust administrative remedies. We do not agree.
It is undisputed that the Metroparks immediately challenged the assessments on constitutional grounds once the Treasurer filed suit in 1995 to collect them as delinquent. In Domito v. Village of Maumee, supra, the court observed:
 While it is true that when a property owner does not make written objection to a special assessment imposed by an assessing body against his property, he thereby waives the privilege of challenging non-compliance with statutory demands on the part of such body, * * * it does not follow that he is precluded from contesting the collection of the assessment in a court of equity on constitutional grounds.
 A special assessment against property in excess of its value after the improvement is made is not in fact an assessment at all, but constitutes the taking of property for public use without compensation.
 If, then, an assessment partially or wholly conflicts with the Constitution, it is to that degree void and uncollectible, and it logically ensues that while the failure to take advantage of administrative remedies operates as a waiver of statutory objections, the property owner against whose property an unconstitutional assessment has been levied may await attempted collection and thereupon enlist the aid of a court of equity to safeguard his fundamental rights.
Domito, 140 Ohio St. at 232 (citations omitted). See also Wolfe v. City of Avon, supra, 11 Ohio St.3d at 82. Similarly, the Metroparks could challenge these assessments on constitutional grounds even though it may have waived other non-constitutional issues.
Moreover, the appellants did not establish that laches barred the Metroparks' defense. In State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections (1995), 74 Ohio St.3d 143, the court said:
 The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.
Id., at 145. See also Connin v. Bailey (1984), 15 Ohio St.3d 34.
In this case, the Metroparks offered evidence showing that it never received formal notice that its objection had been rejected by the AEB in 1984. The appellants offered no evidence indicating either that notice was issued or that the Metroparks did receive such notice. The Metroparks' assertion that the AEB did not give notice of its ruling was therefore undisputed.
The record further shows a series of correspondence between the Metroparks and the City of Broadview Heights from 1988 through 1995, after the Metroparks received its first tax bill. This correspondence expressed without ambiguity the Metroparks' contention that its parcels received no benefit from the City's project. It was not until 1995 that the appellants commenced this litigation to collect the claimed assessments.
Under Domito, supra, the Metroparks did not have to initiate litigation contesting the threatened assessments and could wait until the appellants attempted to collect payment before challenging their validity on constitutional grounds.[5] The appellants' evidence did not show as undisputed fact either an unreasonable delay or the absence of an excuse for the delay. Indeed, the Metroparks' evidence controverted both contentions. And even assuming that the delay in resolving this dispute was detrimental to Broadview Heights, any prejudice is just as attributable to the Treasurer's delay in not filing suit until 1995 as it is to the Metroparks' defense after suit was filed.
The appellants similarly did not establish that a failure to exhaust administrative remedies precluded the Metroparks from contesting the assessments once the Treasurer filed suit to collect them. Even if the Metroparks had notice that the AEB rejected its objection to the proposed assessments so that the Metroparks could have pursued an administrative appeal to protest the assessments, the failure to do so did not bar the Metroparks from opposing them on constitutional grounds once the Treasurer filed suit to collect them. In Domito v. Village of Maumee, supra, paragraph 2 of the syllabus states:
 While failure to make written objection or protest, as provided by law, to the imposition of an assessment against private property, after due notice of the improvement and the amount to be levied therefor, precludes the owner from escaping payment by asserting non-compliance with statutory requirements on the part of the assessing body, it does not estop him from resisting collection on constitutional grounds.
See also Wolfe v. City of Avon, supra; Wagner v. Messner (1940),136 Ohio St. 514.
The appellants assert that a different rule applies once a property owner commences but then abandons administrative review. But in Wolfe the property owner did commence administrative review by filing objections, albeit untimely objections, with the city ten months before he filed an action to enjoin collection. The Wolfe court nevertheless ruled:
 The facts would support the conclusion that Wolfe had not properly filed his objections to the proposed assessments pursuant to R.C. 727.15, so therefore had waived this avenue of challenge to such assessments. However, this untimeliness does not preclude a property owner from questioning the assessment on constitutional grounds.
Wolfe, 11 Ohio St.3d at 82 (citations omitted). While administrative proceedings may have preclusive effect in subsequent proceedings, the Metroparks' failure to pursue fully such administrative relief did not preclude it from resisting collection on constitutional grounds.
In short, neither laches nor a claimed failure to exhaust administrative remedies barred the Metroparks from challenging the assessments on constitutional grounds.
 III
Because the absence of any benefit to these parcels entitled the Metroparks to judgment as a matter of law, the trial court correctly awarded the Metroparks a summary judgment on the Treasurer's complaints and on the Metroparks' third-party complaints.[6] The appellants' assignments of error are accordingly not well taken.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., and PATRICIA A. BLACKMON, J., CONCUR.
 ________________________________ DIANE KARPINSKI, PRESIDING JUDGE
[1] The four parcels were separately acquired as follows:
 (1) Permanent Parcel Number ("PPN") 584-16-021 was acquired in 1962; (2) PPN 584-16-017 was acquired in 1963; (3) PPN 584-17-014 was acquired in 1966; and (4) PPN 584-21-003 was acquired in 1966.
[2] Broadview Heights insists that when an assessment is not paid as levied for payments of the costs of this project, the city is forced to pay, out of other city/taxpayer funds, for the defaulting landowners's share of the monies owed to repay the OWDA. There was no evidence presented, however, verifying that the city did so here.
[3] Case No. 289975, relating to PPN 584-21-003, alleged a tax delinquency in the amount of $1,309.77; Case No. 289977, relating to PPN 584-16-017, alleged a tax delinquency in the amount of $607.68; Case No. 289978, relating to PPN 584-16-021, alleged a tax delinquency in the amount of $1,529.81; and Case No. 289980, relating to PPN 584-17-014, alleged a tax delinquency in the amount of $3,394.72.
[4] Under R.C. 727.01, a special assessment may be levied by any of the following methods:
(A) By a percentage of the tax value of the property assessed;
 (B) In proportion to the benefits which may result from the improvement;
 (C) By the front foot of the property bounding and abutting upon the improvement.
[5] The appellants argue that Domito is distinguishable because the court held the four-year statute of limitations did not bar the property owner's challenge, while the instant case involves the equitable doctrine of laches. This distinction, however, only bolsters our conclusion that laches does not bar the Metroparks' defensive challenge, since the expired statute of limitations did not bar Domito's offensive challenge. While the court did apply laches in an election case in State ex rel. Cooker Restaurant Corp. v. Montgomery County Bd. of Elections (1997), 80 Ohio St.3d 302, that case is readily distinguishable from the case at hand.
[6] The appellants additionally take issue with the Metroparks' alternative contention that R.C. 1545.12 barred the Cuyahoga County Treasurer from forcing a sale of the parcels through foreclosure without first receiving probate court approval. The trial court's journal entry granting summary judgment indicates its decision was based solely on the absence of any special benefit to the parcels; the court did not address R.C. 1545.12. Appellate courts generally refrain from deciding issues the trial court did not consider. See Ross v. Maumee City Schools (1995), 103 Ohio App.3d 58, 66; Village of Oakwood v. Clark Oil Refining Corp. (1986), 33 Ohio App.3d 180, 183-184. Because we have determined that the trial court correctly awarded the Metroparks a summary judgment for the absence of any benefit to these parcels, it is unnecessary for us to consider an issue the trial court did not decide.