OPINION OF THE COURT
Phyllis Orlikoff Plug, J.
Plaintiff, a first grade teacher at PS 123 in Jamaica, Queens, alleges that on January 30, 1997 she suffered injuries when she was forcefully pushed down a stairwell by a student in her class. Plaintiff alleges that the accident was the culmination of long-standing discipline problems she had been experiencing *328 with the student. Defendants move for summary judgment dismissing the claims against them, and plaintiff cross-moves for judgment on the issue of liability.
In support of her claims, plaintiff submits a detailed affidavit, wherein she alleges that the child who injured her was designated by the defendant New York City Board of Education (hereinafter the Board) as a “special needs” child who required a smaller, more supervised classroom setting. Plaintiff states that the Board failed to properly place the child and allowed him to be placed in a regular first grade classroom. Plaintiff states that as early as September and October of 1996 she made complaints about the child’s behavior to both the school principal, Yvonne Jackson, and to other superiors within the Board.
The child received his first suspension on December 10, 1996, whereupon a “letter of grave concern” was issued to his parent, which should have resulted in a conference between the principal and the parent. However, in her deposition testimony, principal Jackson stated that she could not recall whether this conference ever occurred. The basis for the suspension was that the child injured one classmate by piling chairs and desks on top of him and kicked another child in the stomach. The suspension lasted for five days.
On December 18, 1996, the child’s first day back from suspension, he chased and threatened two students with a piece of glass, twisted a child’s arm and kicked and punched two others. Plaintiff alleges that principal Jackson refused her request that the child be suspended. In her deposition, principal Jackson stated that administrative rules prevented her from suspending the child on the first day back from a previous suspension. Principal Jackson stated that she spoke with the child’s mother, who agreed to keep the child home for a week. However, the child was sent back to school the next day, whereupon the child threw chairs in the classroom. Plaintiff alleges that the child received no other discipline for these acts.
The child’s second five-day suspension occurred on January 7, 1997, after the child injured one classmate by striking him over the head, and threw a stapler at another child. On January 10, 1997, a conference was held concerning the subject child whereupon principal Jackson allegedly learned that the child had been designated since April 1996 as a special needs child. Plaintiff alleges despite Jackson’s knowledge that the child did not belong in a regular classroom, no changes were made.
*329 Subsequently, there followed a series of incidents, occurring almost daily from January 16, 1997 until the day of plaintiffs injury. In these instances, the subject child “trashed” a classroom, threw chairs and books which caused injury to other children, and frequently punched, stomped and kicked both plaintiff and the other children. Plaintiff alleges that despite repeatedly reporting these incidents to principal Jackson, sending the child to the principal’s office and filing incident reports, the child was not disciplined, but routinely returned to her classroom.
Plaintiff states that on January 24, 1997 she had a face-to-face discussion with principal Jackson and insisted that the child be removed from her classroom. Plaintiff alleges that she was told by Jackson that she could not refuse to have a child in her classroom and the child was again returned to her room. Principal Jackson stated in her deposition that plaintiffs request that the child be removed from her room was denied because the request was not made in writing; however, principal Jackson could not recall the specific authority for this rule.
On January 30, 1997, the day of plaintiffs injury, a meeting was had with the child’s mother concerning his placement, and defendants allege that the child was transferred to another classroom that day. Defendants further allege that plaintiff volunteered to escort the child down the stairwell where she was allegedly pushed and injured. Plaintiff disputes these allegations and contends that the transfer did not take place until February 3, 1997, four days after she was injured.
In support of her claims, plaintiff also relies upon the deposition testimony of principal Jackson, who stated that she was aware of plaintiffs complaints about the subject child and was aware that the child had caused injuries to other children. Principal Jackson stated that beyond the second suspension there was no other discipline she could impose on the child. It is evident that although Jackson was aware of plaintiffs request that the child be removed from her class, the transfer was delayed because Jackson was concerned that the child’s mother would become “disgruntled” and refuse to participate in further evaluation meetings regarding the child.
Initially, the court finds that the branch of defendants’ motion seeking judgment dismissing the claims against defendant City of New York (hereinafter City) must be granted. The defendant City is correct that, pursuant to Education Law § 2554 (4), the City is not a proper party to this action inasmuch as it *330 is a separate and distinct legal entity from defendant Board of Education. (Gold v City of New York, 80 AD2d 138; Santiago v Board of Educ., 41 AD2d 616.)
However, it is clear that the Board’s motion for judgment dismissing the claims against it must be denied, as it has failed utterly to establish entitlement to judgment in its favor. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851.) Indeed, it is evident from the parties’ sworn statements that there are many disputed issues of fact. It follows that such disputed factual issues also preclude plaintiffs cross motion for judgment in her favor.
Defendants assert that plaintiffs claim must fail on the ground that the Board, a municipal agency, owed her no “special duty,” under the rationale of Cuffy v City of New York (69 NY2d 255). Under this doctrine, a plaintiff must show: (1) the assumption by the municipality of an affirmative duty to act on behalf of the injured plaintiff; (2) knowledge that inaction on its part could lead to harm; (3) some form of direct contact between the agent and the plaintiff; and (4) the plaintiffs justifiable reliance upon the municipality’s affirmative undertaking. (Cuffy v City of New York, supra, 60 NY2d, at 260.)
The court must view the Board’s motion for judgment dismissing the claim in the light most favorable to plaintiff, the nonmoving party. (Cunneen v Square Plus Operating Corp., 249 AD2d 258; Santiago v Frito-Lay, Inc., 235 AD2d 528.) From the allegations made by plaintiff on this motion, a question exists as to whether principal Jackson, as plaintiffs direct supervisor, may have assumed a duty to act on plaintiffs behalf. Indeed, Jackson witnessed the child assaulting the plaintiff on one occasion, was aware of plaintiffs request that the child be removed from her class, and did undertake to meet with the child’s mother to discuss placement alternatives. Inasmuch as Jackson testified that she was aware the child had struck and kicked plaintiff, there can be little question that Jackson was aware that inaction on her part would pose a risk of harm to the plaintiff. Indeed plaintiff and Jackson spoke face-to-face about the ongoing situation just days before plaintiffs injury. Finally, plaintiff duly reported the ongoing incidents to Jackson, and her requests that the child be transferred were denied. Therefore, plaintiff had little alternative but to rely on principal Jackson and the Board to remedy the situation. Thus it is evident that plaintiff has met her burden of raising a question of fact as to whether a “special *331 duty” was owed to her. (Cuffy v City of New York, supra; Carole A. v City of New York, 143 AD2d 242.)
Defendants’ reliance on Vitale v City of New York (60 NY2d 862), Johnson v Board of Educ. (249 AD2d 370), and Sampson v Board of Educ. (255 AD2d 434) are inapposite, as these cases all involved sudden and random acts of violence by students against teachers. In none of those cases was there the longstanding history of discipline problems with the perpetrator, nor the well-documented efforts of a plaintiff teacher to remedy the problem in the face of indifferent or inadequate response by school officials.
Here, plaintiff repeatedly sought the assistance and assurances from school personnel that an ongoing safety threat would be remedied. Indeed, had this case been brought by one of the many students injured by the subject child, such a plaintiff might well demonstrate a breach of the duty of supervision, inasmuch as “school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury * * * [and] that [such] acts could reasonably have been anticipated.” (Mirand v City of New York, 84 NY2d 44, 49.) It does not appear that this standard has ever been applied in a case involving an injury to a teacher. However, it is evident that the elements of notice and foreseeability are implicated by the facts herein.
It has been recognized that teachers are increasingly being exposed to, and victimized by, violence in the classroom. Commentators have voiced concerns that ongoing violence in the face of routine dismissal of legal claims may ultimately deter potential teachers from pursuing careers in education. (See, Silverman, School Violence: Is It Time to Hold School Districts Responsible For Inadequate Safety Measures?, 145 West’s Educ Law Rep 535, 536-537 [Aug. 31, 2000].) In response to the growing number of school violence cases, courts in other jurisdictions have been confronted with analyzing various theories of liability.
In Ross v Maumee City Schools (103 Ohio App 3d 58, 658 NE2d 800), a case with strikingly similar facts, a teacher’s assistant suffered injuries after repeatedly filing incident reports and seeking intervention from her superiors concerning the violent behavior of a special needs child. The Ross court determined that plaintiff had met the burden of raising a question of fact as to the applicability of a claim of employer intentional tort, to wit: knowledge of a danger, substantial certainty of harm, and the requiring of the employee to *332 continue to perform the dangerous task. (Ross v Maumee City Schools, 103 Ohio App 3d 58, 64, 658 NE2d 800, 805, supra.) Claims based on the theory of employer tort have been recognized by the courts in New York. (Acevedo v Consolidated Edison Co., 189 AD2d 497; Helbig v City of New York, 212 AD2d 506.) In Ross, the court noted that the school district knew of the child’s dangerous tendencies, and of the injuries inflicted on plaintiff and the students, but continued his placement and failed to provide plaintiff with additional support. (Ross v Maumee City Schools, supra, 103 Ohio App 3d, at 65, 66, 658 NE2d, at 805, 806.)
It has further been suggested that cases of school violence may lend themselves to analysis under a gross negligence standard, to wit: “ ‘the intentional, conscious failure to do something which one ought to do’ ” or “ ‘the absence of care that is necessary under the circumstances.’ ” (See, School Violence: Is It Time to Hold School Districts Responsible For Inadequate Safety Measures?, op. cit., at 552.) In New York, the courts have found gross negligence to require a showing of deliberate indifference or reckless disregard. (Doe v New York City Dept. of Social Servs., 649 F2d 134; Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d 821.)
In other jurisdictions, courts have imposed liability against school officials who, by their inaction, are found to have abdicated their responsibilities to students and staff. (Larson v Independent School Dist. No. 314, 289 NW2d 112 [Minn 1979]; and see, Hooker, Court Restores Principals as Instructional Supervisors, 1 West’s Educ Law Rep 1 [1982].) New York courts have recognized that school principals may be held liable for intentional acts. (Helbig v City of New York, 212 AD2d 506, supra.) In sum, it is clear that the courts are being increasingly called upon to ascertain the rights of teachers confronted with classroom violence and inadequate institutional support. Therefore, the court finds that the factual and legal basis for plaintiffs claims must be more fully determined at trial.
Finally, it must be noted that while plaintiff also alludes to a theory of liability premised upon breach of contract, namely, the safety provisions of the agreement entered into between her union and the defendant Board, she cites no legal authority for this theory. Rather, this theory of liability appears to have been undermined by the holdings of Krakower v City of New York (217 AD2d 441) and Genao v Board of Educ. (888 F Supp 501). Moreover, pursuing a course of action under breach of contract will not relieve a plaintiff teacher from demonstrat *333 ing the existence of a special duty owed to her by the defendant municipality. (Krakower v City of New York, supra.) The defendant Board is also correct that theories of “proprietary” as opposed to “governmental” liability in cases against a municipality do not support separate claims, but are both governed by the “special duty” analysis of Cuffy. (Cuffy v City of New York, 69 NY2d 255, supra; Bonner v City of New York, 73 NY2d 930; Jacobellis v City of New York, 197 AD2d 671.)
Based upon the foregoing, the court finds that the remaining claims between plaintiff and the defendant Board of Education will require the resolution of numerous issues of law and fact, thus precluding any relief under CPLR 3212.