OPINION
Michael Voyath, Sr. appeals from a judgment of the Montgomery County Court of Common Pleas, which affirmed a Dayton Board of Zoning Appeals ("BZA") decision adverse to him. The City of Dayton cross appeals.
Voyath purchased a building at 2900 Linden Avenue in Dayton, Ohio in 1995 to operate an auto body repair shop. The site in question is located in a Business B zoning district and has been used as an auto body shop since the early 1940s. In addition to performing auto body work inside the shop, Voyath stored numerous vehicles outside of the shop. It appears from the record that some of these vehicles belonged to customers and some did not.
The property in question adjoins two residential districts. Under previous ownership, the site had been cited by the Dayton Zoning Administrator ("the Administrator") on several occasions for zoning violations involving the dismantling, wrecking, or storage of vehicles outside of the repair facility. These notices of violation were issued in 1984, 1985, and 1991. None of these notices were appealed to the BZA.
As had happened in the past, the Administrator began to receive complaints from nearby residents concerning the outdoor storage of vehicles by Voyath. On September 29, 1995, Voyath was cited by the Zoning Inspector for a violation of R.C.G.O. 150.194(C) (1), which states that automobiles may not be dismantled, wrecked, or stored in a Business B district. Voyath was given until October 30, 1995, to comply with the order.
Subsequently, Voyath's attorney met with the Zoning Inspector and the Administrator to discuss the violation. As a result of these discussions, the Administrator issued the following order concerning the outdoor storage of vehicles by Voyath.
 There can be a maximum of ten (10) vehicles stored at the rear of the building, inside the completely enclosed, solid screened fence. All privacy slats must be maintained on the fence at all times. Also, a solid gate to the enclosed area must be installed. The condition of the vehicles stored inside the fenced areas must be licensed and appear to be operable; that is, no missing windshields or window glass. Doors, hoods, axles and wheels must be in place and tires must be inflated at all times. Additionally, no vehicle parts may be stored in this exterior enclosure or anywhere on the property on the outside of the building.
According to the Administrator, this order reflected a compromise between the parties.
Voyath appealed this order to the BZA, claiming that his attorney had not been authorized to enter into an agreement limiting the storage of vehicles. After a hearing, the BZA affirmed the Administrator's order.
Voyath raises three assignments of error on appeal. The city raises two assignments of error in its cross-appeal.
 I. THE TRIAL COURT BELOW ERRED IN AFFIRMING THE BOARD OF ZONING APPEAL'S [SIC] DECISION, WHICH DECISION WAS UNCONSTITUTIONAL, ARBITRARY, CAPRICIOUS, AND UNREASONABLE.
Voyath claims that the use of the land in question as an auto body shop preexisted the Dayton Building Zone Ordinance of 1949 and was a prior, nonconforming use that he was entitled to continue notwithstanding subsequent zoning regulations. Voyath seems to argue, in the alternative, that his storage of vehicles on the premises comported with the use of the property as an auto body shop. The city concedes that an auto body shop is a permitted use of the property but argues that the zoning regulations never permitted an auto body shop to store junked automobiles on its premises in a Business B district.
An auto body shop began operating at 2900 Linden Avenue in 1944. The only zoning ordinance presented to the BZA in this case was the Building Zone Ordinance of 1949, which prohibited auto wrecking establishments and the storage or bailing of junk or old iron in a Business B district but permitted garages and automobile service stations subject to various restrictions. A "garage" was defined as "[a] building in which one or more motor vehicles are cleaned, stored, serviced, repaired or equipped for operation, including the repair and servicing of tires and batteries, but not including exhibition or show rooms or storage of new cars for sale." Dayton Building Zone Ordinance of 1949, Section 208. The term "automobile wrecking establishment" was not defined.[1]
The planning staff's report to the BZA indicated that, in 1944, a permit was issued for the construction of an auto body shop at 2900 Linden Avenue. The report further indicated that, while some expansion of the use had been permitted over the years, the owners of the property had never been "permitted to expand the [inside] storage operation of the use into the parking lot." According to the planning staff, exterior storage of vehicles had never been legally authorized but had occurred illegally over the years due to lenient enforcement of the zoning ordinances.
The parties presented conflicting evidence about Voyath's use of the property in question, particularly with respect to the cars parked on his rear lot. The city presented evidence that numerous cars had been stored on the lot on a long-term basis and that these cars were not owned by Voyath's customers but by Voyath himself. This evidence included Voyath's own testimony that he held the titles to the cars, testimony from neighbors that the tags on the cars dated back several years, and testimony that the cars were missing components such as windshields and tires and did not seem to be receiving service. Voyath testified, however, that these cars were being repaired to be sold. Based on the evidence presented, the BZA could have reasonably concluded that the cars in question were not being stored in keeping with the typical business of an auto body shop. The undisputed fact that Voyath owned the cars shows that the cars were not being repaired for customers as would normally be the case at an auto body shop. The fact that the cars had not been registered for several years also tends to show that they had long been inoperable, distinguishing them from customers' cars which are presumably repaired as quickly as possible. The condition of the cars and the neighbors' testimony that they had been there for a long time also support the inference that restoring them to working order was a long-term, low-priority project. Based on this evidence, the BZA could have reasonably concluded that the storage of the cars in question was not related to the ordinary business of an auto body shop and was the type of storage prohibited in a Business B district.
Because the BZA reasonably concluded that Voyath's use of the property to store his own inoperable cars did not comport with zoning regulations, such use could continue only if it had been a prior, nonconforming use. A party claiming that his property qualifies as a nonconforming use has the burden of establishing that it met the requirements necessary to qualify as a nonconforming use. Petti v. City of Richmond Heights (1983),5 Ohio St.3d 129, 131, fn. 1. Voyath failed to do so in this case.
Voyath claimed that an auto body shop existed on his property prior to 1949 and that his use of the property, including the storage of vehicles, was therefore a prior non-conforming use. Voyath failed to demonstrate, however, that the property had been used to store vehicles prior to 1949 or that such use had been lawful. Voyath bore the burden of proof on this issue, and he presented no evidence to establish the applicable zoning regulations when the business opened in 1944. In the event that the legality of a use, at the time the use was established, cannot be determined from the record, the earliest applicable zoning, in evidence, subsequent to the establishment of the use, shall control. Id., syllabus. Auto wrecking establishments and the storage of junk and iron were expressly prohibited under the Building Zone Ordinance of 1949, the earliest zoning code in evidence subsequent to the establishment of the auto body shop. Moreover, Voyath presented no evidence that the auto body shop that had operated on the premises prior to 1949 had stored inoperable vehicles outside. Thus, the BZA reasonably concluded that Voyath had failed to establish that inoperable vehicles had been lawfully stored on the premises prior to 1949.
Voyath's first assignment of error is overruled.
 II. THE TRIAL COURT BELOW ERRED IN AFFIRMING THE BOARD OF ZONING APPEAL'S [SIC] DECISION[,] WHICH DECISION WAS BASED UPON EVIDENCE THAT WAS NEITHER SUFFICIENT, RELIABLE NOR PROBATIVE AS A MATTER OF LAW.
Under this assignment of error, Voyath contends that the record does not support the BZA's decision because it "is replete with unilateral decisions, the speculations and opinions of the general public masquerading as `facts,' and circumstantial evidence." Voyath also contends that his due process rights were violated because his attorney was not permitted to cross-examine witnesses.
Administrative hearings are necessarily informal, and this fact does not, in itself, violate the participants' due process rights. The record reveals that the witnesses at the BZA hearing were sworn, that Voyath was represented by counsel, and that he did not object to any of the evidence offered at the hearing. The record does not support Voyath's claim that he was prohibited from cross-examining any of the witnesses. Although the nature or form of some of the evidence presented at the hearing may not have been proper under the Ohio Rules of Evidence, which apply to a trial, administrative hearings are not governed by those standards.
The viewpoints of those who spoke at the hearing were apparent, and the BZA was in a position to weigh the participants' biases. Moreover, Voyath himself admitted that he owned many of the cars in question and that they were inoperable. This evidence supported the BZA's conclusion that the cars were not on the lot in the normal course of an auto body shop's business.
Voyath's second assignment of error is overruled.
 III. THE TRIAL COURT BELOW ERRED BY INADVERTENTLY EXCEEDING ITS OWN FINDINGS, AND THEREBY MODIFYING THE ORDER OF THE BOARD OF ZONING APPEALS, IN CONTRAVENTION OF OHIO REVISED CODE SECTION 2506.04.
Voyath claims that the trial court inadvertently and improperly changed the BZA's decision that ten cars could be parked in the rear of the building because the trial court's decision appears to encompass two of Voyath's rear parking lots whereas the BZA's decision affected only one.
There is no evidence in the record that there were two distinct parking lots in the rear of Voyath's building, and it appears to us that the trial court affirmed the order of the BZA except as to the condition of the vehicles Voyath was permitted to keep in the rear lot. Thus, we find this assignment to be without merit.
Voyath's third assignment of error is overruled.
The city's assignments of error on cross-appeal are as follows.
 THE TRIAL COURT ERRED IN FAILING TO APPLY THE PRINCIPLE OF RES JUDICATA TO PRIOR ADMINISTRATIVE PROCEEDINGS BETWEEN THE SAME PARTIES OR THEIR PRIVIES, AND INVOLVING THE SAME ISSUES OR CAUSES OF ACTION.
The city argues that Voyath's appeal was barred by resjudicata because previous owners of the property who had been cited for the unlawful storage of vehicles on the property had not appealed those citations.
The city has cited no authority for the proposition that Voyath should be bound by the actions or inactions of prior owners or that he was in privy with them, and we are aware of none. The doctrine of res judicata does not apply in administrative proceedings unless the parties and the issues in the proceedings are the same. Cole v. Complete Auto Transit, Inc. (1997),119 Ohio App.3d 771, 777, citing Beatrice Foods Co., Inc. v. Lindley
(1982), 70 Ohio St.2d 29, 35.
The city's first cross-assignment of error is overruled.
 THE TRIAL COURT ERRED IN FINDING THE ZONING ADMINISTRATOR'S ORDER TO BE ARBITRARY, CAPRICIOUS, AGAINST THE WEIGHT OF THE EVIDENCE AND IN DIRECT CONTRAVENTION TO THE PURPOSE FOR WHICH A BODY SHOP EXISTS, INSOFAR AS HE ORDERED THAT "THE CONDITION OF THE VEHICLES STORED INSIDE THE FENCED AREAS MUST . . . APPEAR TO BE OPERABLE; THAT IS, NO MISSING WINDSHIELDS OR WINDOW GLASS. DOORS, HOODS, AXLES AND WHEELS MUST BE IN PLACE AND TIRES MUST BE INFLATED AT ALL TIMES."
The city claims that the trial court erred in rejecting some of the BZA's requirements about the condition of the vehicles to be stored in Voyath's enclosed rear lot. We agree. The trial court concluded that the BZA's finding that the outside storage of inoperable automobiles was neither a permitted use nor a prior nonconforming use of Voyath's property was supported by the record. The court also recognized that, in permitting Voyath to store any vehicles on his rear lot, the BZA was accommodating Voyath's business in a way that it was not required to do under the law. Furthermore, the trial court concluded that the BZA's decision was not arbitrary, capricious, or unsupported by the evidence. The trial court proceeded, however, to modify the BZA's order. The court retained the BZA's stipulation that a maximum of ten licensed vehicles could be stored within a privacy fence at the rear of the property, but it eliminated the BZA's requirements that the cars stored therein "appear to be operable" with no missing windshields or window glass, doors, hoods, axles, or wheels, and with no flat tires. In doing so, the trial court expressed concern that customers' cars could have "many of the conditions that are prohibited" by the order.
Having found that the BZA's order was not arbitrary, capricious, or unsupported by the evidence, and having recognized that the BZA was not required to permit the storage of any vehicles on Voyath's property, the trial court erred in modifying the BZA's order. Because Voyath was not legally entitled to store vehicles outdoors on the premises at all, the BZA's accommodation of some storage, subject to certain restrictions, cannot be said to have been unreasonable. Thus, the trial court should not have disturbed the BZA's order. The city's second cross-assignment of error is sustained.
The judgment of the trial court will be affirmed in part and reversed in part.
GRADY, P.J., and FAIN, J., concur.
[1] The Dayton Building Zone Ordinance of 1949 uses the terms "garage" and "auto service station," but the parties refer to Voyath's business as an "auto body shop." Because the parties do not contend that there is any meaningful distinction among these terms for purposes of this appeal, we will use the term "auto body shop" throughout this opinion.