[Cite as *Penewit v. Spring Valley Bd. of Zoning Appeals*, 2019-Ohio-3200.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| DAVID PENEWIT | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2019-CA-6 |
| | : | |
| v. | : | Trial Court Case No. 2018-CV-181 |
| | : | |
| SPRING VALLEY BOARD OF | : | (Civil Appeal from |
| ZONING APPEALS, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of August, 2019.

. . . . . . . . . .

ANDREW P. GEORGE, Atty. Reg. No. 0071311, 530 North Broadway Street, Lebanon, Ohio 45036
      Attorney for Plaintiff-Appellant

JONATHAN F. HUNG, Atty. Reg. No. 0082434, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} In this administrative appeal, Plaintiff-Appellant, David Penewit, appeals from a judgment affirming the decision of Defendant-Appellee, the Spring Valley Board of Zoning Appeals ("BZA"). According to Penewit, the trial court erred in affirming the BZA's decision, which forced him to use a variance/conditional use application process and placed stipulations on his property use even though he provided evidence of his historic nonconforming use. For the reasons discussed below, the trial court did not abuse its discretion in affirming the decision of the BZA. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 2} Before we discuss the factual background, we should note that the administrative transcript is somewhat sparse. The BZA was unable to file a transcript of the BZA hearings because the only available recording was of such poor quality that it could not be accurately transcribed. In addition, the testimony was taken unofficially. The record does contain minutes from the first hearing, which summarize the comments that various individuals made during the hearing.

{¶ 3} Furthermore, the administrative transcript does not include Penewit's application for a zoning permit or his conditional use application to the BZA. These documents were attached, respectively, as Exhibits D and E to Penewit's initial brief in the trial court. *See* Doc. #17, filed on July 30, 2018. Both parties, as well as the trial court, have referenced these documents.[1]

---

[1] Notably, R.C. 2506.03 " ' "contains a liberal provision for the introduction of new or

{¶ 4} Moving on to the evidence that was provided, the record indicates that in March 2005, Penewit purchased four parcels of land at 19 W. Main Street in Spring Valley, Ohio ("the property"). The property is surrounded by Ohio Department of Transportation property, residential properties, and historical and business zoning. Since 1988, the property has been zoned "Village Business," and, according to the Spring Valley Village Zoning Inspector, was originally zoned to be run as a grain business. However, the property later changed hands, and, again, according to the Spring Valley Village Zoning Inspector, could no longer be run as a grain business without issuance of new permits. Penewit never applied for such permits.

{¶ 5} Since Penewit has owned the property, numerous complaints have been made. In December 2015, Al Kuzma, the Chief Building Official for Greene County, Ohio, issued an adjudication order to Penewit, stating that an inspection had been performed and that the buildings on the property violated the Ohio Building Code ("OBC") and were unsafe, due to structural deterioration and lack of maintenance. The order

---

additional evidence in the trial court." ' " *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 96 Ohio St.3d 400, 2002-Ohio-4906, 775 N.E.2d 512, ¶ 13, quoting *Elbert v. Bexley Planning Comm.*, 108 Ohio App.3d 59, 72, 670 N.E.2d 245 (10th Dist.1995). (Other citation omitted.) Courts have held that introduction of evidence via a brief in the trial court is adequate if the transcript does not include all the evidence that was presented to an administrative body. *K-Mart Corp. v. Westlake City Council*, 121 Ohio App.3d 630, 637, 700 N.E.2d 659 (8th Dist.1997), citing R.C. 2506.03(A)(5) and *Schoell v. Sheboy*, 34 Ohio App.2d 168, 296 N.E.2d 842 (8th Dist. 1997). Here, the transcript was deficient on its face, and the parties did not dispute that Exhibits D and E were the correct documents that were filed with the zoning inspector and the BZA. *See also Godfrey v. Miami Metro. Hous. Auth.*, 2d Dist. Miami No. 96 CA 46, 1997 WL 446857, *3 (2d Dist.1997) (additional evidence was heard in trial court under R.C. 2506.03(A)(1) because no record was made of the administrative proceeding). Finally, failure to object to unsworn testimony waives the right to appeal on such a ground. *Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards & Bldg. Appeals*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).

further said that "lack of maintenance through the years has caused the structure to deteriorate to the point where it is considered not habitable, a public nuisance, a blight to the community and endangerment to the public use of the adjacent bikeway and street." December 4, 2015 Adjudication Order, pp.1- 2.

{¶ 6} The order required Penewit to mitigate the violations by applying for necessary building repair permits within 30 days and completing mitigation, or by applying for a demolition permit and completing demolition within 90 days. Although Penewit was informed of his right to appeal the order, he did not do so; he also did not directly respond to the order. For nearly two years, Kuzma attempted to resolve the OBC violations, but was unable to do. As a result, in October 2017, Kuzma asked the prosecutor to file charges against Penewit pursuant to 2011 OBC 1.09.2.

{¶ 7} During the same time frame, the Village of Spring Valley ("Village") had also been trying to make Penewit clean up the property. In the fall of 2016, the Village and Penewit's counsel entered into an agreement that would let Penewit come into compliance over a period of months. However, Penewit failed to comply with the agreement. In June 2017, the Village filed citations against Penewit in Xenia Municipal Court based on several violations. Subsequently, in late September 2017, Penewit was found guilty of running a junk yard without a permit, operating a trucking business without a permit, and failing to obtain a permit to store grain. In a December 5, 2017 letter to the BZA, Dennis Painter, the Village's Zoning Inspector, noted that Penewit was supposed to stop using the property for those purposes until he obtained a permit, but had ignored the judge's order and had continued to store farm equipment and junk on the property.

{¶ 8} In the meantime, on September 8, 2017, Penewit filed an application with the

Village for a zoning certificate (Permit). The proposed use of the property was "AG Use/Storage." The use of the buildings on the property was listed as "Grain & Farm Equipment/Trailer Storage." Under "Remarks," Penewit stated: "No change in use since acquired in 2005. Section 1001." Ex. D attached to Penewit's Trial Brief.[2] Painter denied the application the same day.

{¶ 9} On September 26, 2017, the Village solicitor, Andrew Root, sent Penewit a cease and desist letter. In the letter, Root noted that some matters had been dealt with in Xenia Municipal Court during the past week. However, Root also requested that Penewit cease and desist from the following activity on the Property:

1. Using your property for pick-up and drop-off for your trucking business. This is in violation of zoning resolution 407. Furthermore, you do not have the appropriate permit pursuant to zoning regulation 1001.

2. Storing grain at the location. This is in violation of zoning regulation 407 and 1001.

3. Using your property to store construction and farm equipment along with junk automobiles. This is in violation of zoning regulation 520 and 521.

4. Using the property to store two (2) semi-trailers without a valid current license as required by ordinance 12-05.

5. Failing to erect a visual screening wall, fence, or other landscape mound, pursuant to zoning regulation 515.3.

6. Failing to maintain the property and keep it free of overgrown

---

[2] *See* fn. 1, above.

vegetation, garbage, refuse and other debris, pursuant to ordinance 11-04. September 26, 2017 Letter of Andrew Root, p. 1. Root further informed Penewit that if he failed to comply, the Village would pursue a civil injunction action against him.

{¶ 10} Subsequently, on September 27, 2017, Penewit filed an application with the BZA for a "conditional use" of the property. *Id.* at App. E. The application did not ask for a variance. The description of Penewit's request was as follows:

> Owner requests permission to use the subject premises for grain storage from his personal farming operation in the grain bins located on the premises. Said bins have been used continuously for grain storage for the past 40+ years. Owner further asks to use other structures on the premises for storage of his farm machinery and equipment.
>
> With respect to Owner's vacant lot, he requests permission to store his personal farm machinery and equipment, as well as his personal semi-trailers associated with his non-farming business.

*Id.*

{¶ 11} The BZA set a December 5, 2017 public hearing on Penewit's conditional use request. The same day, Painter provided the BZA with a letter asking it to reject all three of Penewit's requested conditional uses. Painter outlined the history of Penewit's failure to comply with various matters, including agreements, court orders, cease and desist orders, and the Greene County Building Official's Adjudication Order. Painter also noted that Penewit was jeopardizing resident safety by hauling unknown liquids, some of which were fire hazards as well as explosive, and parking them in the Village.

{¶ 12} In the event that the BZA granted Penewit's request to store grain in the

silos, Painter asked the BZA to impose several conditions, including restrictions on vehicles and on hours of operation.

{¶ 13} The hearing was held as scheduled on December 5, 2017. As noted, the BZA did not swear in witnesses and the recording of the hearing was of such poor quality that it could not be reproduced. The BZA prepared notes of the hearing, and Penewit and his attorney did appear and speak. In addition, Painter spoke during the meeting about these matters: the complaints about the property; Penewit's lack of compliance; historical zoning records; and conditions that should be imposed on any conditional use permit. In addition, Village residents commented on the poor condition of the property, junk and dilapidated buildings, and the noise. At the end of this hearing, the BZA said it would schedule another hearing.

{¶ 14} A further hearing was set for January 23, 2018, but was rescheduled to February 22, 2018. According to the decision that the BZA filed, the second hearing was held on that date and the parties presented additional arguments. However, as with the earlier hearing, there is no transcript of the testimony. On February 22, 2018, the BZA filed a decision granting Penewit's conditional use application to store grain in the grain silo on the property. The decision stated as follows:

1. Applicant David Penewit's use variance is granted to store grain in the grain silo but must follow the conditions set forth herein:

2. Only one (1) licensed simi-truck [sic] and simi-trailer [sic] allowed on the property and only when the loading and unloading of the grain is taking place;

3. No running of grain dryers before 6:00 AM or after 10:00 PM;

4.   No other simi-trailers [sic] are permitted on the property;

5.   No hauling of grain to or from this location before 6 AM or after 10:00 PM.

6.   Applicant David Penewit must comply with building codes and obtain all required approvals;

7.   Applicant David Penewit must comply with all health codes and obtain all required approvals;

8.   Applicant must build a fence around the property as required by Zoning Regulations 515.3;

9.   Applicant must remove all junk vehicles, trailers, tractors, trash, and debris;

10.   Applicant must comply with all terms of the Xenia Municipal Court Order; and

11.   All functional vehicles and farm equipment must be stored in the buildings on the property.

February 22, 2018 BZA Decision, pp. 2-3.

{¶ 15} On March 22, 2018, Penewit filed a notice of appeal from the BZA decision. After the agency's transcript was filed, the trial court stated that it would hear the matter on briefs.   After the parties' briefs were filed, the court referred the case to a magistrate for hearing and decision.   The magistrate then heard oral arguments and issued a decision on December 3, 2018, affirming the BZA's decision.   No additional testimony was taken.

{¶ 16} After Penewit filed objections to the magistrate's decision, the trial court

overruled the objections and affirmed the BZA's decision. This timely appeal followed.

II.   Alleged Error

{¶ 17} Penewit's sole assignment of error states:

Did the Trial Court Commit Reversible Error by Affirming the Decision of the BZA Which Forced Appellant into a Variance/Conditional Use Application Process and Placed Stipulations on His Property Use Despite Evidence of Historic Non-Conforming Usage by Appellant.

{¶ 18} Before addressing this assignment of error, we will briefly outline the standards of review for administrative appeals. "R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals. R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal. It provides that 'the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.' The statute further provides that the court's judgment may be appealed by any party to the court of appeals 'on questions of law.' " *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 22, quoting R.C. 2506.04.

{¶ 19} "The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03 * * *." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). "Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make

factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Cleveland Clinic* at ¶ 24, citing *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

{¶ 20} In contrast, the court of appeals has a standard of review that is "more limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). The court of appeals may "review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Id.* at 34, fn. 4, quoting R.C. 2506.04.

{¶ 21} An " 'abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 22} With these standards in mind, we will consider Penewit's contentions. Initially, Penewit argues that his use of the property preexisted the zoning regulations and must be allowed to continue. In this regard, Penewit relies on Spring Valley Township Zoning Resolution 803 and on R.C. 519.19. [3] Both these authorities allow for

---

[3] On appeal, Penewit has not specified a specific section of the local resolution, but in the trial court, he relied on Section 803. Appellant's Trial Brief, Doc. #17, p. 8, fn.10.

continuation of non-conforming uses of land that were lawful and that existed when the zoning resolution was adopted or amended, except where the non-conforming uses have been voluntarily discontinued for two years or more. However, as the BZA points out, these provisions do not apply, as the property is located in the Village of Spring Valley, not in the incorporated area of Spring Valley Township. *See* Spring Valley Township Zoning Resolution 104 ("The provisions of this Resolution shall apply to all land within the incorporated area of Spring Valley Township, Greene County, Ohio."); Spring Valley Village Zoning Regulation 104 ("The provisions of this Regulation shall apply to all land within the incorporated area of Spring Valley Village, Greene County, Ohio.").

{¶ 23} In addition, R.C. 515.19 applies to townships, not municipalities. As a result, the zoning regulations of Spring Valley Village and the statutes in R.C. Chap. 713 apply. *See* R.C. 713.01(A); R.C. 713.06.

{¶ 24} Under R.C. 713.15:

The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, or for a period of not less than six months but not more than two years that a municipal corporation otherwise provides by ordinance, any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code.

{¶ 25} Section 804 and 804.2 of the Spring Valley Village zoning regulations

contain essentially the same provisions as R.C. 713.15.

{¶ 26} Under established law, a "village can lawfully restrict the use of land within its boundaries by reasonable, non-arbitrary, legislatively created zoning ordinances." *Village of Oakwood v. Clark Oil & Refining Corp.*, 33 Ohio App.3d 180, 182, 515 N.E.2d 1 (8th Dist.1986), citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). However, a village "cannot create new zoning regulations or conditions which prevent a landowner from continuing lawful activities that began before the village changed its zoning code." *Id.* at 183, citing *Pschesang v. Village of Terrace Park*, 5 Ohio St.3d 47, 49, 448 N.E.2d 1164 (1983). The term "nonconforming use" is used "to designate a use of property which was lawful prior to the enactment of a zoning ordinance and which use may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions." *C.D.S., Inc. v. Village of Gates Mills*, 26 Ohio St.3d 166, 168, 497 N.E.2d 295 (1986).

{¶ 27} The magistrate concluded that Penewit's use of the property to store grain did not fall within the scope of a non-conforming use under R.C. 713.15 because it was not lawful. This decision was based on the fact that agricultural and trucking uses were not included among the allowed principal, accessory, or conditional uses in the Village Business District, and that Penewit never applied for a permit. *See* Magistrate's Decision, Doc. #26, pp. 10-11. In addition, the magistrate found that Penewit failed to meet his burden of showing there was a preexisting nonconforming use. After considering the evidence and objections, the trial court agreed with the magistrate's findings. Trial Court Decision, Doc. #30, p. 4.

{¶ 28} "A use of property must be lawful at the time the use was established in

order to qualify as a nonconforming use. Therefore, a use not permitted by the applicable zoning ordinance when the use was established does not constitute a nonconforming use." *Pschesang* at syllabus. Notably, nonconforming uses are disfavored under the law. A nonconforming user's rights "are limited, and the clear intent and purpose is to eliminate such nonconforming uses as rapidly as possible." *City of Kettering v. Lamar Outdoor Advertising, Inc.*, 38 Ohio App.3d 16, 18, 525 N.E.2d 836 (2d Dist.1987).

{¶ 29} As noted, Penewit's property was located in the Village Business District. The permitted principal uses within this district do not include agricultural use or grain storage. *See* Spring Valley Village Zoning Regulation 407.2.

{¶ 30} According to the recitation of evidence from the hearing, the zoning inspector, Painter, searched available records and found that from 1988 forward, the properties now owned by Penewit were all zoned business.[4] Painter further stated that no municipality in Ohio can have agricultural-zoned land within village or city limits. Another individual, a village resident (James Bird), stated that in the early 1950s, the State of Ohio mandated a change in zoning on his property from agricultural to residential.

{¶ 31} Penewit could not recall what the property deed said about how the property was zoned when he bought it (which was in 2005). He stated at the December 2017 hearing that the buildings on the property had been used for grain storage "for a long time" before he bought the property. He did not specify a date, and there is no evidence in the record as to who previously owned the property in 1988 or 1989 when the property

---

[4] The zoning regulations indicate that the "Official Zoning District Map" has existed since June 1989. *See* Spring Valley Village Zoning Resolution 302.

was zoned business, nor is there any specific evidence as to the use of the property at that time or whether the use was interrupted at any time.[5]   Penewit also failed to present any evidence regarding whether the property changed hands between 1988 and 2005, when he purchased it.

**{¶ 32}** The burden of proving a nonconforming use is on the party claiming the use. *Petti v. City of Richmond Hts.*, 5 Ohio St.3d 129, 131, 449 N.E.2d 768 (1983), fn.1. *Accord Sell v. Adams Twp. Bd. of Zoning Appeals*, 2d Dist. Darke No. 00-CA-1518, 2000 WL 1867582, *4 (Dec. 22, 2000) (applicant has the burden of presenting "sufficient evidence to support a finding of a preexisting nonconforming use").

**{¶ 33}** In view of the lack of facts in the record, we cannot say that the trial court abused its decision by affirming the BZA's decision.   We do note that the trial court appears to have erred in one respect.   Under applicable law, once a legal nonconforming use is established, it "passes to successive owners."  *Herres v. Harrison Twp. Bd. of Trustees*, 2d Dist. Montgomery No. 23668, 2010-Ohio-3909, ¶ 17.   As a result, the correct analysis would consider whether a nonconforming use existed when the Village Zoning Districts were established in 1988 or 1989.   Instead, the magistrate concluded that Penewit's use was not lawful (and therefore, not a preexisting nonconforming use), because agricultural and trucking uses were not included among the allowed principal, accessory, or conditional uses in the Village Business District, and Penewit never applied for a permit to store grain. Doc. #26 at pp. 10-11.

**{¶ 34}** However, this error is harmless, because the magistrate did go on to find a

---

[5] Penewit did say in his application for a conditional use permit that the grain had been stored on the property continuously for "40+ years."   *See* Ex. E attached to Doc. #17. This was merely a statement on his application, and he offered no proof at the hearing.

lack of evidence in the record that a preexisting nonconforming use existed when the Village zoning regulations were adopted or amended. Doc. #26 at p. 11. We agree.

{¶ 35} As a second point of argument, Penewit contends that the BZA committed administrative error by forcing him to apply for a zoning permit and by failing to have appropriate forms that would reflect his argument about nonconforming uses. In response, the BZA notes that Penewit has waived this issue by failing to raise it in the trial court.

{¶ 36} After reviewing the record, we agree with the BZA. "Any procedural errors in the administrative review process should be argued and disposed of during the initial appeal, and may not be raised for the first time on appeal from the trial court ruling." *BSI Sec. Servs. v. Ohio Dept. of Pub. Safety*, 2d Dist. Montgomery No. 24050, 2011-Ohio-4866, ¶ 13. Penewit did not raise this issue below, and the trial court did not have a chance to address it. As a result, the issue has been waived.

{¶ 37} Penewit's final point is that he was denied due process because the evidence was scant and the BZA did not address his contentions that he used the property for his own farming purposes, which preexisted any regulation. Penewit, therefore, argues that the BZA decision was arbitrary. During this discussion, Penewit again mentions that he was "forced" into a variance proceeding.

{¶ 38} Our review of the record indicates that Penewit did not challenge the use of a permit process in the trial court. Furthermore, the notes of the public hearing reveal the following statement by Penewit:

> Mr. Penewit would like to use his property for grain storage as an
> individual farmer not open to [sic] for public use. The property is currently

not permitted to be used for grain storage. Mr. Penewit states he has been there since 2005 and that the buildings have been used for grain storage for a long period of time before he bought the property. Other buildings are used for storage of his farm equipment which he has done some improvements and clean up on. *They would like a permit to store his personal grain in the silos on said property*.

(Emphasis added.) December 5, 2017 Hearing Notes, pp. 1-2.

**{¶ 39}** Penewit specifically asked for a permit, and he received one, as the BZA is letting him store grain in the silos; the BZA simply imposed some conditions that were reasonable, due to the nature of the surrounding area, which included residential property. For example, Penewit was prohibited from running grain dryers before 6:00 a.m. or after 10:00 p.m., and hauling of grain is also restricted during those hours. February 22, 2018 BZA Decision at pp. 2-3. Given that residents complained of noise and traffic, this was perfectly reasonable.

**{¶ 40}** As a final matter, the BZA was not required to present evidence about a nonconforming use. Instead, Penewit had the burden of proving a nonconforming use, if that was what he sought. *Petti,* 5 Ohio St.3d at 131, 449 N.E.2d 768, fn.1. Moreover, Penewit argued in the trial court that the use of his property was agricultural and that agricultural uses were exempt from the requirement of a permit under Section 1001 of the Zoning Code. Appellant's Trial Brief, Doc, #17, at p. 8. However, as we noted above, the zoning code that Penewit relied on in the trial court was the Spring Valley Township Zoning Code, which does not apply. The Village's zoning code, which does apply, does not contain such an exemption. In addition, Painter, the Zoning Inspector, stated that

"no municipality in the State of Ohio can have land zoned agricultural with in [sic] Village or city limits." December 5, 2017 Hearing Notes at p. 3.

{¶ 41} Based on the preceding discussion, we find no abuse of discretion in the trial court's decision. Accordingly, Penewit's assignment of error is overruled.

## III. Conclusion

{¶ 42} Penewit's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Andrew P. George
Jonathan F. Hung
Hon. Michael A. Buckwalter